(54 Misc. Rep. 418)

EMERY v. BLISS.

(Supreme Court, Special Term, New York County.  May, 1907.)

DEEDS—BUILDING RESTRICTIONS.

A grantee of a portion of land adjoining the grantor's premises covenanted not to erect at any time any buildings, the front or southerly wall of which would extend further to the south than the present front or southerly wall of the grantor's residence, or the southerly wall of any building thereafter erected on its site. A collateral agreement, executed the same day, covenanted for an open space of 10 feet between the residences. *Held* that an ornamental projection on the front of the grantee's building, consisting of columns and surmounting balustrade rising to the second story, with a maximum projection of 18 inches and not imbedded in the south wall, merely laid against it, is no part of the front or southerly wall within the meaning of the covenant, and its maintenance cannot be enjoined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Deeds, §§ 541, 542.]

Action by John J. Emery against Jennette Dwight Bliss to restrain the maintenance of certain ornamental projections on defendant's house. Judgment for defendant.

Baldwin & Blackmar (Abel E. Blackmar, of counsel), for plaintiff.
Gould & Wilkie (John L. Wilkie, of counsel), for defendant.

LEVENTRITT, J.  This is an equity action, in which the plaintiff, alleging the breach of a covenant in a deed from him to the defendant, seeks to restrain the latter from maintaining certain ornamental abutments, pedestals, columns, or projections on the front of her house, and to compel their removal by mandatory injunction.  The plaintiff, in the year 1894, purchased for $140,000 a lot of land 50 by 100 feet on the northerly side of Sixty-Eighth street, between Madison and Fifth avenues.  Shortly thereafter he erected a building thereon, which he has since occupied as a private dwelling.  In January, 1903, he purchased a similar lot 50 by 100 feet adjoining his dwelling on the east side, for which he paid the sum of $300,000.  On January 23, 1905, he sold all but the most westerly 5 feet to the defendant for a consideration of $260,000.  The deed of conveyance contained the following covenant:

"And, further, the said party of the second part, for herself, her heirs, executors, administrators, and assigns, does now forever covenant, promise, and agree to and with the said John J. Emery and Lela Emery, their heirs, executors, administrators, and assigns, that she will not at any time hereafter erect any building or buildings upon the land hereby conveyed, the front or southerly wall of which building or buildings shall extend further to the south than does the present front or southerly wall of the residence of the said John J. Emery, or the southerly wall of any building hereafter erected on the site of said residence of John J. Emery, should such future building be placed further to the south than the said existing residence."

On the same date the parties executed a supplemental or collateral agreement by which the plaintiff agreed not to construct any building on the easterly five feet of his premises, being the five feet retained by him out of his second purchase, and the defendant bound herself similarly not to build on the westerly five feet of her lot, so that there

should remain an open space of ten feet between the two residences. This agreement contained the following clause:

"That there shall be no projections from the easterly wall of any building erected or to be erected upon the premises now of said John J. Emery, or from the westerly wall of any building to be erected upon the premises of said Jennette Dwight Bliss, other than usual doors or windows and string courses and cornices, which shall not exceed 12 inches and not extend northerly more than five feet along said westerly wall, and no encroachments whatsoever upon the open space 10 feet wide hereby created, or intended so to be."

Thereafter the defendant began the construction of her house. This, with the exception of the interior trim, has now been completed. By the end of February, 1906, the building had so far progressed that the plaintiff was advised of the nature of the construction of the front portion of the building. Claiming the violation of the covenant here insisted upon, he protested to the defendant. A futile conference was had, the defendant asserting that there was no violation. Thereupon, on April 2, 1906, this action was begun. An injunction pendente lite was denied.

The construction of which the plaintiff complains is two stories high and consists of four bases and pedestals, with surmounting columns, supporting a cornice and ornamental balustrade. A more detailed description is necessary to understand the nature of the construction. The four granite bases are 4 feet 4 inches wide, approximately 2 feet 8 inches deep, and about 13 inches high. The superimposed pedestals are about 8½ feet high, with a width of 3 feet 1½ inches and an average depth of about 2 feet 1½ inches. The columns resting on the pedestals consist of the usual plinth, shaft, and capital, with a total height of about 21 feet. The greatest extension of the shaft southerly from the wall is about 1 foot 8 inches. Above the columns and connecting them is a stone balustrade a little over 4 feet high. The balusters stand free, while the whole railing is about a foot out. The wall behind this construction just described is of a uniform thickness of about 20 inches up to the third story, then decreasing until it is about 12 inches thick at the top. As a whole, the construction is not imbedded in the wall. The columns are, in part, merely laid against it, and, again, partially engaged so as to be retained in position; and the imbedding of no part of the structure exceeds 4 inches. The wall itself is of brick, with granite facing, up to the first story. Neither the four granite bases nor any other part of the construction have any weight-bearing function with relation to the wall. The whole is purely ornamental and decorative, answering an æsthetic need, rather than a practical use.

It is now necessary to show the relation of the defendant's front or southerly wall to that of the plaintiff. The front portion of the defendant's house, exclusive of the construction heretofore described, stands on a line which is about 3 feet 11 inches north of the city building line. The plaintiff's front wall begins on a point in the same line 10 feet westerly, and extends along the line about 26 feet, at which point it swells out into a swell front or bay for the balance of about 24 feet. This curved part of the wall extends from foundation to roof, and, at the point of maximum swell, extends almost 10 inches beyond the city building line. In front of the straight part of the wall of the plaintiff's dwell-

ing there is a covered stoop or portico. This consists of two pilasters engaged in the wall and two free standing columns about 5 feet out, all surmounted by a stone roof or entablature, cornice, and balcony, extending about to the level of the second story.

On this state of facts and on the testimony adduced before me I am of the opinion that the defendant is entitled to judgment. We are concerned simply with the strict construction of a restrictive covenant; that is to say, after ascertaining the intent of the parties from the language employed and from such reference to the subject-matter and to surrounding facts and circumstances as will throw light on what the parties meant by "front or southerly wall," we are to enforce the covenant strictly. Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275, 21 Am. St. Rep. 652; Blackman v. Striker, 142 N. Y. 555, 37 N. E. 484.

The defendant argues that the plaintiff does not come into equity with clean hands, because a portion of his own front wall extends beyond the city building line. But the inequity complained of, if such it is, is not related to the issue. Plaintiff's building was completed when the deed and the collateral agreement were made. The defendant contracted with reference to an existing condition. The plaintiff has committed or suffered no acts, since the date of the covenant, which have made his hands unclean.

Again, it is urged that, as the curved front of the plaintiff's wall, being an integral part of it for its entire height, extends far beyond the front wall of the defendant's building, including the construction described, there can be no question of a breach of the covenant. While the argument has some force, considered from the standpoint of the language of the covenant taken alone, it is at variance with the intent that prompted its inclusion in the deed. It was certainly intended to impose some burden on the defendant. As the bay extends to and in part beyond the building line, which defined the limit to which the defendant might build, a prohibition restraining the extension of the wall beyond that line imposed no burden.

I prefer to rest my opinion on the proposition that the construction described is no part of the "front or southerly wall," within the meaning of the covenant. It is to be taken as an ornamental projection, applied for decorative purposes—an architectural and æsthetic feature, rather than a structural one. Had the pedestals, columns, and surmounting balustrade been built entirely free from the wall, instead of being applied and having portions partially engaged, a contention that they constituted part of the wall would be entirely untenable. The whole projection may not improperly be described as a very much elaborated or modified portico, not unrelated to that of the plaintiff. Its distinctive feature is the four columns rising to the second story. They have no weight-bearing function. They do not serve to support the south wall of the house. They are partially engaged therein, so that they may be held in place; but that does not make them a part of the wall, any more than the plaintiff's surmounting stone entablature, supported by free columns, is a part of the wall, because partially engaged therein.

The intent of the parties was not to restrict ornamentation and adornment. It is quite clear that they had a distinction in mind between

projections, even if applied to the wall, and the wall itself. The collateral agreement executed simultaneously with the deed, after restricting the defendant's westerly wall to a line, a specified distance between the two properties, restricts "projections" as well. The omission of any reference to "projections" in the deed is at least significant. If, as alleged in the complaint, it was the plaintiff's purpose to guard against any adjoining house occupying a greater prominence than his own, some restriction of projection or ornamentation would have been proper and natural in the covenant. The failure to include "projections" when restricting the front wall, while including it in the clause as to the westerly wall, convincingly shows that projections were not intended to be embraced in the inhibition. The question thus simply reduces itself to determining whether the columnar construction is a part of the wall. I hold that it is not.

There should be judgment for the defendant, with costs.

Judgment for defendant, with costs.